UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ALAN and NICOLE HOLDEN,

       Plaintiffs,                              Case No. 1:12-cv-789

v                                         HON. JANET T. NEFF

PENELOPE MILLER-SMITH *et al.*,

       Defendants.
_____/


**<u>OPINION</u>**

Pending before the Court in this continuing litigation under the Individuals with Disabilities Education Act (IDEA[1]), 20 U.S.C. § 1400 *et seq.*, is Defendants' Motion to Dismiss or for Summary Judgment (Dkt 27). Defendants argue that Plaintiffs failed to pursue their administrative remedies before the IDEA's two-year statute of limitations expired and that their present claims are therefore barred. Plaintiffs filed a response in opposition to Defendants' motion (Dkt 30), seeking to establish equitable tolling as an exception to the IDEA's statute of limitations. Defendants filed a Reply (Dkt 31), and Plaintiffs filed a Sur-Reply (Dkt 33). For the reasons that follow, the Court holds that even assuming the IDEA's limitations period may be tolled for equitable reasons, equitable tolling is not properly applied to toll the limitations period on the facts at bar. Consequently, Plaintiffs' claims are barred, and Defendants are entitled to summary judgment in their favor.

---

[1] In 2004, Congress enacted the Individuals with Disabilities Education Improvement Act (IDEIA) to "reauthorize" the IDEA. *See* Pub. L. No. 108–446, 118 Stat. 2647 (Dec. 3, 2004), effective July 1, 2005. Consistent with the amended act itself, which continues to state that it may be cited as the "Individuals with Disabilities Education Act," 20 U.S.C. § 1400(a), and the statutory references in the parties' motion papers, the references herein will be to the IDEA, as amended.

# I. BACKGROUND

## A. The IDEA

The IDEA is a Spending Clause statute that seeks to ensure that "all children with disabilities have available to them a free appropriate public education" (FAPE). 20 U.S.C. § 1400(d)(1)(A). The Act "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, but imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 52 (2005) (quoting *Board of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 183 (1982)).

Participating states, such as Michigan, must certify to the Secretary of Education that they have policies and procedures that will effectively meet the Act's conditions, 20 U.S.C. § 1412(a). *Schaffer, supra. See* MICH. COMP. LAWS § 380.1701 *et seq.* (Michigan's Mandatory Special Education Act [MMSEA]). State educational agencies, in turn, must ensure that local schools and teachers are meeting the state's educational standards, 20 U.S.C. §§ 1412(a)(11), 1412(a)(15)(A). *Schaffer, supra.* Local educational agencies (school boards or other administrative bodies) can receive IDEA funds only if they certify to a state educational agency that they are acting in accordance with the state's policies and procedures, § 1413(a)(1). *Id.* at 52-53.

As the Supreme Court observed, "[t]he core of the statute ... is the cooperative process that it establishes between parents and schools," and the "central vehicle for this collaboration is the [Individualized Education Program (IEP)] process." *Schaffer,* 546 U.S. at 53. "State educational authorities must identify and evaluate disabled children, 20 U.S.C. §§ 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)." *Id.* The Act

2

requires that an IEP include, among other items,

    (I)    a statement of the child's present levels of academic achievement and functional performance, . . .;

           . . . .

    (II)    a statement of measurable annual goals, including academic and functional goals, . . . ;

           . . . .

    (III)    a description of how the child's progress toward meeting the annual goals described in subclause (II) will be measured and when periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards) will be provided;

    (IV)    a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child . . . ;

    (V)    an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in the activities described in subclause (IV) . . . ;

    (VI)    (aa) a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child on State and districtwide assessments . . . ;

20 U.S.C. § 1414(d)(1)(A).

Parents and guardians play a significant role in the IEP process. *Schaffer*, 546 U.S. at 53. They must be informed about and consent to evaluations of their child under the Act, § 1414(c)(3). *Id.* Parents are included as members of "IEP teams," § 1414(d)(1)(B). *Id.* They have the right to examine any records relating to their child, and to obtain an "independent educational evaluation of the child," § 1415(b)(1). *Id.* They must be given prior written notice of any changes in an IEP, § 1415(b)(3), and be notified in writing of the procedural safeguards available to them under the Act,

§ 1415(d)(1).  *Id.*  If parents believe that an IEP is not appropriate, then they may seek an administrative "impartial due process hearing," § 1415(f).  *Id.*  School districts may also seek such hearings.  *Id.*  In sum, the IDEA contemplates that the "special knowledge and experience of the agencies will be utilized in devising the plan, that it will be fine-tuned through the cooperation of the child's teachers and parents, and that the advice of a qualified and impartial hearing officer will be available concerning the adequacy of the plan."  *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989).

Before 2004, the IDEA did not contain a provision imposing a limitation on the time to request a due process hearing, and, as a result, courts borrowed the general state-law statute of limitations relating to suits for injury to a person or property brought against states and their agencies.  *See King ex rel. King v. Floyd Cnty. Bd. of Educ.*, 228 F.3d 622, 624 (6th Cir. 2000) (instructing the selection of an appropriate state statute of limitations "on a case-by-case basis 'considering the posture of the case and the legal theories presented'") (quoting *Janzen v. Knox Cnty. Bd. of Educ.*, 790 F.2d 484, 486 (6th Cir. 1986)).

In reauthorizing the IDEA in 2004, *see* Pub. L. No. 108–446, 118 Stat. 2647 (Dec. 3, 2004), effective July 1, 2005, Congress added a two-year limitations provision to the Act, a provision that provides that "[a] parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows."  20 U.S.C. § 1415(f)(3)(C).  Congress promulgated two exceptions to the timeline, as follows:

> The timeline described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to—

      (i)        specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or

      (ii)      the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D). Congress also specified that an IDEA claim accrues on the date that a plaintiff or his parent "knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(b)(6)(B).

After the due process hearing, any aggrieved party may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). Moreover, the IDEA does not preclude a disabled child from pursuing other available remedies under federal law in state or federal court, provided that the child first exhaust all administrative remedies available under state law where the relief sought is available under the IDEA. *See* 20 U.S.C. § 1415(*l*) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter*.") (emphasis added).

## B.  Relevant Facts

In the fall of 2008, Plaintiffs' son began attending preschool in a special education classroom at Ross Park Elementary School, a public school within the Mona Shores School District (Mona Shores) (Dkt 1-7, Compl. ¶¶ 8, 10). Plaintiffs' son has a disability that qualifies him for special

education and related services under the IDEA, and Plaintiffs and Mona Shores agreed to an IEP, which Plaintiff Alan Holden signed on October 27, 2008 (*id.* ¶¶ 8, 19, 21, 25).

On December 18, 2008, Plaintiff Nicole Holden attended a Christmas party in her son's classroom (Dkt 1-7, Compl. ¶¶ 32-33). According to Holden, her son sat in a booster seat attached to a small chair during the party (*id.* ¶ 34). Plaintiffs allege that use of the booster seat was "unreasonable" (*id.* ¶ 91). Plaintiffs withheld their son from the classroom and requested a meeting (*id.* ¶ 42).

On or about February 6, 2009, after attempting several IEP meetings, Plaintiffs' attorney commenced the administrative process set forth in the IDEA by requesting an IDEA due process hearing, 20 U.S.C. § 1415(b)(7) (Op., Dkt 60 at 6, Case No. 1:10-cv-697). The State of Michigan Office of Administrative Hearings and Rules (SOAHR) scheduled a pre-conference hearing for March 10, 2009 (*id.*). Plaintiffs received notice of the pre-conference hearing and additional information from SOAHR concerning the nature of the hearing and their rights under the IDEA (*id.*). At their March 10, 2009 pre-conference hearing, however, Plaintiffs voluntarily withdrew and agreed to dismiss their due process hearing request (*id.* at 7). The administrative law judge consequently dismissed their due process complaint and removed their complaint from the SOAHR hearing docket (*id.*).

More than sixteen months later, on July 21, 2010, Plaintiffs initiated their first federal case against Shelley Jensen, their son's preschool teacher; Penelope Miller-Smith, the Director of Special Education Services; Superintendent Terry Babbitt; and the Mona Shores School District, Case No. 1:10-cv-697. On August 18, 2010, Defendants requested a Pre-Motion Conference, proposing to file a dispositive motion based on their proposition that Plaintiffs' Complaint fell within the purview

of the IDEA and that Plaintiffs had not yet exhausted their administrative remedies (Dkt 7, Case No. 1:10-cv-697).  This Court issued a briefing schedule, permitting the parties to brief the exhaustion question Defendants presented, and  the parties subsequently filed their respective motion papers.

On September 12, 2011, this Court issued its Opinion and Order dismissing Plaintiffs' July 2010 complaint without prejudice for Plaintiffs' failure to exhaust their administrative remedies. Plaintiffs did not contest the applicability of the IDEA exhaustion requirement to their claims, nor did Plaintiffs contest that their claims were unexhausted (Dkt 49 at 6, Case No. 1:10-cv-697). Rather, Plaintiffs argued that pursuit of the administrative process would be "futile," thereby excusing their failure to exhaust (*id.*).  However, this Court disagreed, concluding that Plaintiffs had not borne their burden of demonstrating the futility of the administrative process they sought to bypass (Op., Dkt 60 at 19-20, Case No. 1:10-cv-697).  That Plaintiffs had pleaded tort claims, requested money damages, entered into prior agreements with Defendants, and unilaterally transferred their child to another school district did not, for the reasons the Court delineated, demonstrate that the child's alleged injuries could not be redressed "to any degree" by the IDEA's administrative procedures and remedies (*id.* at 19, quoting *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008)).  Rather, this Court held that exhaustion should be required "to give the educational agencies the initial opportunity to ascertain and alleviate the alleged problem or provide information relevant to claims under other statutes" (*id.* at 20).

On October 27, 2011, Plaintiffs filed a second due process complaint with SOAHR.  On December 29, 2011, Defendants filed a motion to dismiss the due process complaint for failure to request a due process hearing within the IDEA's two-year limitations period, 20 U.S.C. § 1415(f)(3)(C).  On May 25, 2012, the administrative law judge issued an order granting

7

Defendants' motion to dismiss (Dkt 28-1). The administrative law judge determined that Plaintiffs' allegations only involved events occurring between October 2008 and June 2009 and that Plaintiffs' due process complaint was therefore untimely filed (*id.* at 3-4). Further, the administrative law judge determined that the exceptions in the statute of limitations were inapplicable and that equitable tolling was unavailable, given that the IDEA has "its own statute of limitations with its own tolling provisions" (*id.*). The administrative law judge observed that "even if I agreed that the doctrine could/should apply under certain circumstances, I would not apply it under the circumstances as they exist in the instant matter [because] I don't find this to be a case that involves 'rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising [her] rights'" (*id.* at 4-5 (citation omitted)).

On July 18, 2012, Plaintiffs filed the present action in state court, alleging the same nine claims alleged in their first federal case in 2010 plus a new claim for denial of a FAPE under 20 U.S.C. § 1415(i)(2)(A). Plaintiffs named the same defendants—teacher Jensen, Special Education Director Miller-Smith, Superintendent Babbitt, the Mona Shores School District, and added Jane Does ## 1-5 as defendants. Defendants removed the case to this Court on July 31, 2012. Following a Pre-Motion Conference on August 12, 2013, this Court issued a briefing schedule, permitting the parties to brief the limitations issue Defendants presented. The parties filed their respective motion papers in December 2013 (Dkts 27-33). Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).

8

## II. ANALYSIS

### A. Standard of Review

Defendants filed a combined Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) and Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(a). Generally, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations. *Humphreys v. Bank of Am.*, No. 13-5793, 2014 WL 521169, at *4 (6th Cir. Feb. 11, 2014) (citing *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run," and "[i]f the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Lutz, supra* (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Slusher v. Carlson*, 540 F.3d 446, 453 (6th Cir. 2008). However, the determination that a complaint was filed outside the applicable limitations period is a conclusion of law. *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 242 (6th Cir. 2009). The application of a legal doctrine, such as the doctrine of equitable tolling, is also a question of law. *Rose v. Dole*, 945 F.2d 1331, 1334 (6th Cir. 1991).

## B.  Discussion

1.    *Whether the IDEA's Statute of Limitations May Be Equitably Tolled*

Statutes of limitation are statutes of repose established to extinguish rights, justifiable or not, that might otherwise be asserted.  *English v. Bousamra,* 9 F. Supp. 2d 803, 807-08 (W.D. Mich. 1998) (citing *Kavanagh v. Noble,* 332 U.S. 535, 539 (1947)), aff'd 188 F.3d 507 (6th Cir. 1999). Among other goals, limitations periods are designed to compel plaintiffs to exercise their rights of action within a reasonable time, protect potential defendants from the protracted fear of litigation, and promote judicial efficiency by preventing defendants and courts from having to litigate stale claims. *Id.* (citing *Moll v. Abbott Labs.,* 506 N.W.2d 816, 823 (Mich. 1993); *United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491 (6th Cir. 1998)).  These statutory restrictions "are not simply technicalities[, but rather are] fundamental to a well-ordered judicial system," *Bd. of Regents v. Tomanio,* 446 U.S. 478, 487 (1980), and, therefore, must be strictly construed.  *Id.* (citing *Turner v. Mercy Hosps. & Health Servs.,* 533 N.W.2d 365, 368 (Mich. Ct. App. 1995)).

Defendants assert that Plaintiffs knew about the alleged action that formed the basis of their due process complaint—witnessing the child restrained in the booster seat—on or about December 18, 2008, and that Plaintiffs' remaining claims regarding the deficient IEP and/or instruction are alleged to have occurred before June 2009, when the child last attended classes provided by Defendants (Dkt 28 at 17).  Defendants therefore argue that Plaintiffs' claims accrued more than two years before the filing of their due process complaint on October 17, 2011, i.e., more than four months past the two-year limitations period set forth in 20 U.S.C. § 1415(f)(3)(C) (*id.* at 16-17). According to Defendants, Plaintiffs have not alleged any factual basis for application of the statutory tolling provisions in § 1415(f)(3)(D) (*id.* at 17-18).  Defendants further opine that the statutory

tolling provisions are exclusive and preclude application of common law equitable tolling principles (*id.* at 18-19). Defendants conclude that the administrative law judge therefore correctly dismissed the due process complaint as untimely and that Plaintiffs' failure to exhaust their administrative remedies permanently bars their present claims (*id.* at 15, 23-25).

Plaintiffs do not dispute that they filed their due process complaint after the expiration of the two-year limitations period set forth in § 1415(f)(3)(C), nor do Plaintiffs contend that the statutory tolling provisions of § 1415(f)(3)(D) apply to their case. Plaintiffs instead seek to establish the applicability of the common law doctrine of equitable tolling to the IDEA's statute of limitations. Specifically, Plaintiffs argue that "federal precedent mandates equitable tolling of IDEA's two year statute of limitations in appropriate circumstances" (Dkt 30 at 16). Plaintiffs opine that "Defendants' argument that the two year statute of limitations set forth in the IDEA is not subject to equitable tolling is at odds with binding Supreme Court precedent" (*id.* at 17).

Plaintiffs' argument lacks merit.

The Court has carefully reviewed the United States Supreme Court decisions relevant to the equitable tolling issue that is the crux of the parties' arguments. First, in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), the Supreme Court announced that there was a "rebuttable presumption" of equitable tolling applicable to suits against the United States, noting that "Congress, of course, may provide otherwise if it wishes to do so." *Id.* at 95-96 (deciding that the 30-day period for bringing an employment discrimination suit against the federal government was a time period subject to equitable tolling). The Court ultimately determined the principles of equitable tolling did not extend to the facts before it. *Id.* at 96.

Next, in *TRW Inc. v. Andrews*, 534 U.S. 19, 22 (2001), the Supreme Court examined the

11

two-year limitations period governing suits under the Fair Credit Reporting Act (FCRA).  The Supreme Court held that the Ninth Circuit Court of Appeals had "erred in holding that a generally applied discovery rule controls this case," where the statutory provision setting forth the time prescription included not only a general rule but also an exception covering willful misrepresentation.  *Id.* at 22, 28.  The Supreme Court determined that Congress implicitly excluded a general discovery rule by explicitly including a more limited one.  *Id.* at 28.  The Court held that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."  *Id.* at 28 (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)).  The Court opined that "incorporating a general discovery rule ... would not merely supplement the explicit exception contrary to Congress' apparent intent; it would in practical effect render that exception entirely superfluous in all but the most unusual circumstances."  *Id.* at 29.

In *Young v. United States*, 535 U.S. 43 (2002), the Supreme Court held that it is "hornbook law" that limitations periods are "customarily subject" to equitable tolling, unless tolling would be "inconsistent with the text of the relevant statute."  *Id.* at 49 (citations omitted).  In deciding that the limitations period in the Bankruptcy Code was subject to equitable tolling, the *Young* Court emphasized that bankruptcy courts are courts of equity and "appl[y] the principles and rules of equity jurisprudence."  *Id.* at 50 (citation omitted).  The Court closely examined the Code's text and rejected the petitioners' arguments that two provisions in the Code displayed a congressional intent to preclude tolling.  Regarding the first statutory tolling provision, the Court opined that it was "quite reasonable for Congress to instruct nonbankruptcy courts (including state courts) to toll nonbankruptcy limitations periods (including state-law limitations periods) while, at the same time,

assuming that bankruptcy courts will use their inherent equitable powers to toll the federal limitations periods within the Code." *Id.* at 53. Similarly, the Court determined that the other tolling provision "demonstrates that the Bankruptcy Code incorporates traditional equitable principles" and therefore "supplements rather than displaces principles of equitable tolling." *Id.*

Subsequently, in *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court opined that it had "made clear that a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in *favor* 'of equitable tolling.'" *Id.* at 645-46 (quoting *Irwin*, 498 U.S. at 95-96). Like the *TRW* and *Young* Courts, the *Holland* Court closely examined the text of the statute before it to determine whether its limitations provision may be tolled for equitable reasons. In examining the Antiterrorism and Effective Death Penalty Act (AEDPA), the *Holland* Court decided that the presumption in favor of tolling was strengthened by the following three facts: (1) the AEDPA statute of limitations defense is not jurisdictional, i.e., it does not set forth "an inflexible rule requiring dismissal whenever" its "clock has run," *id.* at 645 (citations omitted); (2) equitable principles have traditionally governed the substantive law of habeas corpus, *id.* at 646; and (3) the AEDPA's one-year limitations period is "not particularly long" and does not contain language that is "unusually emphatic," *id.* at 646-47. The Court rejected the respondent's argument that certain exceptions in the statute operated to rebut the presumption in favor of equitable tolling. The Court determined that the provisions the respondent identified instead related to events *triggering* the running of the limitations period or that addressed exhaustion. *Id.* at 647. After examining the AEDPA's textual characteristics, the Court also determined that the statute's "basic purpose" did not rebut the basic presumption set forth in *Irwin*. *Id.* at 648-49 (opining that the importance of the habeas corpus writ "counsels hesitancy before interpreting AEDPA's statutory silence as indicating

a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open").

Given this case-by-case approach, and the fact that the Supreme Court has not yet addressed whether the IDEA's limitations period may be tolled for equitable reasons, this Court finds wholly unpersuasive Plaintiffs' assertions that Supreme Court precedent "mandates" equitable tolling of the IDEA limitations period and that this Court is thereby "bound" to apply equitable tolling (Dkt 30 at 7; Dkt 33 at 5-9). Indeed, the only appellate court to reach the issue thus far decided it contrary to Plaintiffs' position. In *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 248 (3d Cir. 2012), the Third Circuit Court of Appeals relied on the legislative and regulatory history of the 2004 amendments to the IDEA to determine that "only the enumerated statutory exceptions may exempt a plaintiff from having his claims time-barred by the statute of limitations" *Id.* at 248 (citing S.Rep. No. 108-85, at 40 (2003) ("The committee does not intend that common law determinations of statutes of limitations override this specific directive...."); 71 F. Reg. 46,540, 46,697 (Aug. 14, 2006) ("It is not necessary to clarify that common-law directives regarding statutes of limitations should not override the Act or State regulatory timelines, as the commenters recommended, because the Act and these regulations prescribe specific limitation periods which supersede common law directives in this regard.")). The Third Circuit held that "IDEA plaintiffs cannot escape its statute of limitations by invoking equitable tolling doctrines recognized under state law [but] can argue only for the application of one of the statutory exceptions." *Id.* (relying on *Andrus*, 446 U.S. at 616-17).

Turning then to an examination of the text of the IDEA, and specifically its provision setting forth the time prescription, 20 U.S.C. § 1415(f)(3)(C), the Court observes that like the limitations provision in *TRW*, 534 U.S. at 22, 28, the IDEA's limitations provision includes not only a general

rule but also two exceptions covering "specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint," § 1415(f)(3)(D)(*i*); and "the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent," § 1415(f)(3)(D)(*ii*).  Further, the exceptions operate as true exceptions, not provisions related to events that would instead trigger the running of the limitations period or that address exhaustion, as the *Holland* Court found in examining the purported tolling provisions before it.

Examination of the IDEA's textual characteristics also lends support to the position that Congress intended to rebut the "presumption" of equitable tolling, *see Irwin*, 498 U.S. at 95-96, and draft text inconsistent with the proposition that limitations periods are "customarily subject" to equitable tolling," *see Young*, 535 U.S. at 49.  Unlike the AEDPA's "statutory silence," *see Holland*, 560 U.S. at 648-49, the IDEA's statutory scheme is readily apparent, granting exceptions only for conduct by state and local educational officials that impedes the prompt channeling of claims through administrative proceedings.  *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir. 2003).  The two-year period permits plaintiffs to exercise their rights of action within a reasonable time, protects potential defendants from a protracted fear of litigation, and promotes judicial efficiency by preventing defendants and courts from having to litigate stale claims.

Indeed, while equitable considerations are appropriate in determining relief in an IDEA case, *see Florence Cnty. v. Carter*, 510 U.S. 7, 16 (1993), the Court posits that permitting equitable tolling of the IDEA's limitations period would hamper the Act's primary purpose of promoting "the prompt presentation and resolution of disputes" and "allowing the student to get the services he or she needs as quickly as possible."  *M.D., supra.*  The very heart of the IDEA—children—demands a time-

15

sensitive approach to effectively accomplish the tasks of evaluating children's needs, and describing, meeting and measuring their annual goals.  *See Alexopulos ex rel. Alexopulos v. S.F. Unified Sch. Dist.*, 817 F.2d 551, 556 (9th Cir. 1987) ("Congress recognized that it is critical to assure appropriate education for handicapped children at the earliest time possible.  Failure to act promptly could irretrievably impair a child's educational progress.").

For these reasons, the Court holds that equitable tolling of the IDEA's statute of limitations is not available to Plaintiffs.

2.      *Whether the Facts at Bar Warrant Equitable Tolling of the IDEA's Limitations Period*

However, even assuming, arguendo, that equitable tolling is available to Plaintiffs, the Court agrees with Defendants (and the administrative law judge) that equitable tolling would not be properly applied to toll the IDEA's limitations period on these facts.  To determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Jackson v. United States*, ___ F.3d ___ , No. 13-1243, 2014 WL 1876240, at *6 (6th Cir. May 12, 2014) (citing *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

"The propriety of equitable tolling is determined on a case-by-case basis and is to be narrowly applied." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009) (citing *Truitt, supra*; *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1336 (6th Cir. 1995)).  In *Irwin,* for example, where the United States Supreme Court determined that the 30-day period for bringing an employment discrimination suit against the federal government could be equitably tolled, the

Supreme Court ultimately decided that the principles of equitable tolling the panel had described did "not extend to what is at best a garden variety claim of excusable neglect."  498 U.S. at 96 (concomitantly observing that "[f]ederal courts have typically extended equitable relief only sparingly").

Here, Plaintiffs were not ignorant of the exhaustion requirement and its accompanying two-year deadline but were, in fact, emphatically arguing against the exhaustion requirement in the course of this litigation.  Defendants themselves placed Plaintiffs on actual notice on August 18, 2010, when they notified Plaintiffs of their bases for filing a motion to dismiss.  As Defendants point out, a timely due process complaint was then available to Plaintiffs, whereas now, efforts to assess the effects on the child of the use of the booster seat in 2008 and to discern an appropriate remedy, if any, would be much more difficult (Dkt 31 at 11).  Defendants persuasively contend that they should not now "be put to the task of litigating issues which may have been expeditiously resolved through the administrative process but for plaintiffs' delay" (*id.* at 13).  The Court therefore finds that the knowledge and prejudice factors tip against equitably tolling the IDEA's limitations period.

The remaining factor to consider is Plaintiffs' diligence in pursuing their rights.  Plaintiffs assert that there is "no question" that they acted diligently in pursuing their rights inasmuch as they filed their first federal action within the statutory period for their claims (Dkt 30 at 22; Dkt 33 at 9).  According to Plaintiffs, the limitations period was tolled by the filing of their first federal action (Dkt 30 at 16, 28).  Plaintiffs also assert that they were "diligent in pursuing their rights, but were prevented from doing so by Defendants' insistence that administrative remedies be pursued first" (Dkt 30 at 17).[2]

---

[2]Many of Plaintiffs' arguments in response to Defendants' present motion to dismiss are reiterations of their 2010 arguments, but the Court declines to revisit the futility issue.  For the

However, it is not Defendants' "insistence" that gives rise to an exhaustion requirement, but the text of the IDEA itself, namely, 20 U.S.C. § 1415(*l*).  The litigation choices that confronted Plaintiffs do not constitute "special" or "extraordinary" circumstances that would warrant equitable tolling; rather, Congress specifically contemplated that parents would have these choices and expressly addressed the scenario in 20 U.S.C. § 1415(*l*) by providing that parents could pursue other available remedies under federal law in state or federal court, provided that all administrative remedies were first exhausted.

Plaintiffs' decision to proceed by exclusively relying on the strength of their argument that exhaustion was futile was a decision squarely within their control.  Although aggrieved parties may prefer to proceed directly to federal court, exhaustion requirements are specifically designed to deal with parties who do not want to exhaust, by creating "an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  *See also Polera v. Bd. of Ed. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) ("The purpose of the IDEA is to provide educational services, not compensation for personal injury.").  Hence, the diligence factor, i.e., the manner in which Plaintiffs pursued their rights and sequenced their litigation, does not tip the balance of the equitable-tolling analysis in Plaintiffs' favor.

Last, Plaintiffs argue that determining that their claims are barred "will render exhaustion futile" (Dkt 33 at 10-11).  The Court disagrees.  "[F]or an individual showing no reason why claims could not be brought within the statutory limitations period, the expiration of the period reflects only

_____

reasons the Court previously and more fully expressed in Case No. 1:10-cv-697, the rationales the Sixth Circuit identified for requiring exhaustion—avoiding circumvention by parties and not affording more than "sufficient" relief to an injured party—are fully applicable on these facts.  *See Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000).

on the individual's choice and not the adequacy of the remedy." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 595 (8th Cir. 2013) (affirming the district court's decision to grant the school district summary judgment due to the parents' lack of exhaustion of administrative remedies under  the IDEA).

In sum, even assuming that the IDEA's limitations period may be tolled for equitable reasons, the Court, in its discretion, holds that equitable tolling is not properly applied to toll the limitations period on these facts.  Consequently, Plaintiffs' claims are barred, and Defendants are entitled to summary judgment in their favor.

### III.  CONCLUSION

For the foregoing reasons, the Court determines that Defendants' Motion to Dismiss or for Summary Judgment (Dkt 27) is granted.  An Order will be entered consistent with this Opinion.  As the Order resolves all pending claims, a corresponding Judgment will also be entered.


Date: June  20 , 2014                                  /s/ Janet T. Neff                             
                                                      JANET T. NEFF
                                                      United States District Judge

19